The KEY–TAG CHECKING SYSTEM COMPANY

v.

FORMMASTER CORPORATION

and

Felix Renick.

Civ. A. No. 55–532–W.

United States District Court
D. Massachusetts.

Jan. 10, 1957.

Herbert B. Ehrmann, Boston, Mass., Max Dressler, Chicago, Ill., for plaintiff.

David Wolf, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a suit for infringement of the Campbell patent, United States Letters Patent 2,192,786 issued March 5, 1940, to plaintiff, as assignee. According to its title, the patent relates to a "Collar Ironing Device". But plaintiff's contention is that the disclosure relates to a device which simultaneously irons a shirt collar and a shirt yoke.

In 1938 when application was made for this patent, there were manufactured, for men's wear, shirts with collars attached, as well as shirts without such attachments. The applicant addressed himself to the problem of ironing the collars of the first type of shirt.

In order to understand the patent in suit it is appropriate to note at the outset that for a long time commercial laundries had used shirt folding tables. In the days when there were only shirts without attached collars, the use of folding tables had gone at least to the point where evening dress shirts were laid bosom down on a flat table and the neck placed in a recess, within which an expansible neck former responded to an operating mechanism. Wareham, Patent 1,351,079.

When the attached collar shirt became common, the commercial laundry needed a machine to iron and shape the collar without distortion. Responding to this need McEwen invented an expanding collar ironing device disclosed in Patent 1,-996,548. It contemplated (1) a base upon which a shirt is laid face down, (2) a board to be placed over the back of the shirt and over the edges of which a shirt is folded, and (3) as means for ironing the collar, a semi-ring-like stationary member which engaged the front of the collar and a reciprocal member, which was moved longitudinally toward the back of the collar, the latter member being heated and the former member deriving heat therefrom when both of said

12. N. T. 79–81, 239–243, 429–430.

13. The plaintiff did not rely on paragraphs 1 to 4 of its motion for new trial at the argument or in its brief.

members were in close relationship. The difficulty with the McEwen machine was that, as a result of the longitudinal movement of the reciprocal member, the collar was distorted from a circular to a more or less oval shape.

Campbell in his specification declares he has made an improvement over McEwen in the construction of the neckband engaging members and the means for operating the same. Of his two claims, only the second need be recited, for if it is not valid, plaintiff admits that the first is not. Campbell's second claim read as follows—

"In an ironing device for the inner surface of a shirt neckband the combination of a stationary ironing block having a canopy extending from the upper portion thereof and providing an obstructed space beneath said canopy, said canopy having a smooth upper surface for ironing the shirt yoke at the nape of the neck; a plurality of movable ironing blocks and means to move the same toward and away from said canopy; and means comprising a leaf spring carried by each movable block, each leaf spring having an unsecured end extending beyond its block, the free end of a leaf spring on one of said blocks having its extreme edge only in slidable contact with a surface of the next adjacent leaf spring, said springs collectively constituting a continuous neckband ironing medium."

Despite the contrary contentions of plaintiff, it is the Court's opinion that this claim (like claim 1) is addressed only to the ironing of the inner surface of the shirt neckband, and makes no claim as to the ironing of the shirt yoke. This conclusion is perhaps suggested by the opening phrase of the claim, but it is made clearer when we consider what is said to be the role of the canopy. The reference is to "the canopy *having* a *smooth upper surface for ironing the* shirt yoke." But this is a mere description of the type of canopy. How the canopy does or could iron the yoke is

not explained. And one is left to surmise whether the canopy is expected to cooperate with some undescribed member of a shirt folding table (such as the folding board, 8, shown in fig. 1 of the patent), or is to be effective in smoothing a shirt yoke when tension is applied to the shirt tails as they are pulled by the operator. The only way that the functioning of the canopy enters into the claim is to provide a place beneath which, toward which, and from which move a plurality of movable ironing blocks.

Put another way, claim 2 does not go beyond claiming that the stationary ironing block is part of the mechanism for ironing the neckband or collar.

If this conclusion be correct, then it follows that all that the patent claims is a disclosure of a machine which has a plurality of movable ironing blocks which (by some means) are moved to and away from a stationary ironing block (under which they can move without obstruction). Attached to each movable block is a leaf spring in contact with the leaf spring of the next block. Collectively these constitute a continuous neckband ironing mechanism. And inevitably this continuity must make a circle of 360°, for otherwise "the free end of a leaf spring on one of said blocks" could not be described as "having its extreme edge *only in slidable contact with a surface of* the next adjacent leaf spring."

Looked at in this light, the claim is really for nothing more than for an ironing machine which in essence consists of ironing blocks moving to and from a central internal point toward the rim or circumference of a collar. Such ironing devices were well known for many years in the hat blocking business. And they would readily occur to anyone versed in mechanical matters who was asked to prepare a machine for ironing a collar.

Moreover, anyone skilled in the mechanical arts who was shown the machine embodied in McEwen and told that its defect was that it unduly elongated the collar or otherwise gave it a distorted shape would readily see that the remedy was to have the central ironing mecha-

nism operate not by moving one member longitudinally from another but to have two or more members moving radially from a common center toward a circumference.

Finally, if I am mistaken about my interpretation of the significance of the reference to the canopy in the claim, and if the claim be construed to include the functioning of the canopy as an ironing mechanism as well as a shelter for the moving blocks, I should nonetheless conclude that its functioning even in combination with the ironing blocks was not enough to constitute patentable invention. For it seems to me that anyone with mechanical ability who wished to iron both the yoke of a shirt and the neckband in one operation could readily have drawn upon his experience and the prior art to design a machine of the type embodied in the patent.

There being no patentable invention in either claim 1 or claim 2 of United States Letters Patent 2,192,786, there shall be entered a

Decree for defendant.